Martin J. Peck, #16273
Security State Bank Building
107 E. Harvey, Second Floor
P.O. Box 421
Wellington, KS 67152
(620) 326-5997
Fax (620) 326-6887
peck@martinjpeck.com

## UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS
Sitting at Wichita

ELIZABETH BAXTER

                  *Plaintiff*

    v.

LEGAL HELPERS DEBT RESOLUTION,
LLC, a Nevada Limited Liability Company;
MACEY, ALEMAN, HYSLIP & SEARNS, an
Illinois General Partnership;
AMERICAN DEBT SERVICES, INC.,  a
California Corporation; and
GLOBAL CLIENT SOLUTIONS, LLC, an
Oklahoma Limited Liability Company
                  *Defendants*

Case No. 11-CV-1050-KHV-JPO

## FIRST AMENDED COMPLAINT

COMES NOW the plaintiff, Elizabeth Baxter, by and through her attorney, Martin

J. Peck, and for her cause of action against the defendant states as follows:

### The Parties

1.    The plaintiff, Elizabeth Baxter, is a natural person residing in Sumner

County, Kansas.

2.    Defendant Legal Helpers Debt Resolution, LLC is a Nevada limited liability

company that may be served with process through its registered agent, Thomas G. Macey,

1525 Dean Martin Drive #1408, Las Vegas, NV 89103.  Members of the LLC are believed

to be resident in Illinois (Jeffrey Aleman, and possibly Thomas G. Macey); possibly

Nevada (Thomas G. Macey); Colorado (Jason E. Searns); and Ohio (Jeffrey Hyslip).  No

member is believed to be resident in Kansas.

United States District Court, District of Kansas
FIRST AMENDED COMPLAINT
*Elizabeth Baxter v. Legal Helpers Debt Resolution,* et al.
Case No. 11-CV-1050-KHV-JPO

3. Macey, Aleman, Hyslip & Searns, ("Macey") is an Illinois general partnership that may be served with process, *inter alia* (a) through general partner Thomas G. Macey, 1525 Dean Martin Drive #1408, Las Vegas, NV 89103; (b) through general partner Jeffrey John Aleman, 223 S. Wacker, Suite 5150, Chicago, IL 60606-6371; and (c) through partner Keith A. Wellman at 3917 Wyoming St., Kansas City, MO 64111.   Partners are believed to be resident in Illinois (Jeffrey Aleman, Jason Allen, Jason Blust, and possibly Thomas G. Macey); possibly Nevada (Thomas G. Macey); Colorado (Jason E. Searns); and Ohio (Jeffrey Hyslip); Alaska (Eric Auten); Alabama (Melinda Dionne and Brian Carmichael); Arkansas (Steve Westerfield and Brian Wilson); California (Richard Gustafson, Alex Hilton, and Adam Gerard); the District of Columbia (Joseph Vuckovich); Delaware (Matthew Carucci); Florida (Karen Gatto); Georgia (Berk Sauls and Christopher Tang); Hawaii (Greg Dunn); Minnesota (J.D. Haas and James Agosto); Idaho (William Ranill and Angela Hermosillo); Indiana (Shobhana Kasturi); Missouri (Keith Wellman and Sean Paul); Kentucky (Randall Head); Kentucy (Debbie Bowman); Louisiana (Gary Brown and Greta Wilson); Maryland  (Sonia Kochhar and Thomas Wall); New Hampshire (Jeremey Miller and Brian McCaffrey); Maine (Andrew Kull); Michigan (Lori Leigh); Mississippi (John Windsor  and Brian Wilson); Montana (Mark Anderson and Ralph Wilkerson); North Carolina (Grant Patten); North Dakota (Keith Trader); Nebraska (Frank Barron); Pennsylvania (Thomas Nicely, Lee Schottenfeld, and Ronald Rojas); New Mexico (Tim Daniel); Nevada (Donald Norris); New York (Maria Coen and Roger Yehl); Oklahoma (Ron Brown); Rhode Island (Joshua Karns and Robert Jacquard); Oregon (Amber Wolf); South Carolina (John Cantrell and Alex Sparra); South Dakota (Tim Hogan); Tennessee (Dwight Moore and David Sandy); Texas (C. Bryan Fears); Utah (Oliver Myers, Luc Nguyen, Justin Rammell, and Jeremy Schwendiman); Virginia (Martin Conway, Todd Hoyle, Sean Hylton); Vermont (Tim King); Washington (Mona Lisa Gacutan); Wisconsin

United States District Court, District of Kansas
FIRST AMENDED COMPLAINT
*Elizabeth Baxter v. Legal Helpers Debt Resolution,* et al.
Case No. 11-CV-1050-KHV-JPO

(William Murphy and Steven Schaefer); West Virginia (J.R. Morgan); and Wyoming (Guy Cleveland). No partner is believed to be a resident of Kansas. According to materials provided to the plaintiff by Macey, "Legal Helpers Debt Resolution, LLC is a trade name of the law firm of Macey, Aleman, Hyslip & Searns . . . ." Throughout this Complaint, "LHDR" is used to collectively refer to Macey and Legal Helpers Debt Resolution, Inc.

4.      Defendant American Debt Services, Inc. ("American Debt Services") is a California corporation with a principal place of business at 900 E. Hamilton Ave. Suite 100, which may be served with process through its registered agent Spiegel & Utrera, P.A., d/b/a Spiegel & Utrera, P.C., 4727 Wilshire Blvd. Ste. 601, Los Angeles, CA 90010.

5.      Defendant Global Client Solutions, LLC is an Oklahoma limited liability company that may be served with process through its registered agent Timothy Merrick, 9820 E. 41st St., Suite 400, Tulsa OK 74146. The only member of defendant Global Client Solutions, LLC is Global Holdings LLC, which is also an Oklahoma limited liability company. Based upon experience gained in previous litigation involving Global Client Solutions, LLC, no member of Global Holdings LLC is a resident of Kansas.

6.      Tim Hurlbut is a natural person of unknown residence who is an employee or other agent of American Debt Services.

7.      Keith A. Wellman is described by LHDR's website as being LHDR's "Attorney Partner" who is licensed in Kansas.

## Jurisdiction and Venue

8.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

9.      Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(a)(2).

United States District Court, District of Kansas
FIRST AMENDED COMPLAINT
*Elizabeth Baxter v. Legal Helpers Debt Resolution,* et al.
Case No. 11-CV-1050-KHV-JPO

## Factual Allegations Common to All Counts

10.   "Debt adjustment"—which is variously known as "debt management," "credit counseling," "prorating," "debt consolidation," "budget planning," and "debt pooling"—is regulated in nearly every state.

11.   In at least thirty-three states, debt adjustment contrary to state law is criminalized; in at least eight states, as a felony.  The following states have criminalized unlawful debt adjustment as a felony:

   a.    Arizona, see ARIZ. REV. STAT. § 6-133 (2010) (criminalizing, as a felony, violations of ARIZ. REV. STAT. §§ 6-703 & 6-715 (2010) (prohibiting unlicensed debt management), with "each day of violation [constituting] a separate offense");

   b.    Florida, *see* FLA. STAT. § 817.806 (2010) (criminalizing, as a felony, violations of laws regulating debt management contained in FLA. STAT. §§ 817.801 to .806 (2010));

   c.    Illinois, *see* 205 ILL. COMP. STAT. ANN. 665/16 (LexisNexis 2010) (criminalizing, as a felony, debt management without a license);

   d.    Maryland, *see* MD. CODE ANN., FIN. INST. § 12-929 (2010) (criminalizing, as a felony, violations of the Maryland Debt Management Services Act, MD. CODE ANN., FIN. INST. §§ 12-901 to -931 (2010));

   e.    Michigan, *see* MICH. COMP. LAWS § 451.434 (2011) (criminalizing, as a felony, violations of the Michigan Debt Management Act, MICH. COMP. LAWS §§ 451.411 to .437 (2009));

   f.    Nebraska, *see* NEB. REV. STAT. ANN. § 69-1215 (LexisNexis 2010) (criminalizing unlicensed debt management);

   g.    New Hampshire, *see* N.H. REV. STAT. ANN. § 399-D:24 (LexisNexis 2010) (criminalizing, as a felony for entities, unlicensed debt adjustment and establishing civil penalties and remedies); and

   h.    Vermont, *see* VT. STAT. ANN. tit. 8, § 2764 (2010) (criminalizing, as a felony—"[violators] shall be imprisoned not more than two years or fined not more than $ 1,500.00, or both"—debt adjustment without obtaining a license as required by VT. STAT. ANN. tit. 8, § 2752 (2010))

United States District Court, District of Kansas
FIRST AMENDED COMPLAINT
*Elizabeth Baxter v. Legal Helpers Debt Resolution,* et al.
Case No. 11-CV-1050-KHV-JPO

      12.    The following twenty-five states have criminalized unlawful debt adjustment

as a misdemeanor:

      a.    Arkansas, *see* ARK. CODE ANN. § 5-63-302 (2010) (criminally prohibiting debt adjusting subject to exclusions contained in ARK. CODE ANN. § 5-63-305 (2010));

      b.    California, *see* CAL. FIN. CODE § 12102 (2010) (criminalizing operating as a "prorater" without a license as prohibited by CAL. FIN. CODE § 12200 subject to exclusions in CAL. FIN. CODE § 12100);

      c.    Connecticut, *see* CONN. GEN. STAT. 36a-665 (2010) (criminalizing debt adjustment except for licensees pursuant to CONN. GEN. STAT. 36a-656 (2010) and subject to exceptions contained in CONN. GEN. STAT. 36a-663 (2010));

      d.    Delaware, *see* DEL. CODE ANN. tit. 11, § 910 (2010) (criminalizing debt adjustment except as permitted by licensees regulated by DEL. CODE ANN. §§ 2401A - 2439A (2009));

      e.    Georgia, *see* GA. CODE ANN. § 18-5-4(a) (2010) (criminalizing debt adjusting except as permitted by Chapter 5 of Title 18 of the Georgia Code);

      f.    Hawaii, *see* HAW. REV. STAT. § 446-2 (2010) (criminalizing debt adjustment except as specifically permitted by HAW. REV. STAT. § 446-3 (2010));

      g.    Indiana, *see* IND. CODE ANN. § 28-1-29-13 (LexisNexis 2010) (criminalizing debt management without a license);

      h.    Iowa, *see* IOWA CODE § 533A.13 (2010) (criminalizing debt management without a license);

      i.    Kansas, see K.S.A. 21-4402(c) (criminalizing debt adjustment);

      j.    Kentucky, *see* KY. REV. STAT. ANN. § 380.990(2) (2010) (criminalizing debt adjustment except as specifically permitted by KY. REV. STAT. ANN. § 380.030 (2010));

      k.    Louisiana, *see* LA. REV. STAT. ANN. § 14:331 (2010) (criminalizing debt adjustment for profit);

      l.    Missouri, *see* MO. REV. STAT. § 425.020 (2010) (criminalizing debt management except for "reasonable compensation" as defined by MO. REV. STAT. § 425.010(4) as being no more than $50 as an initial fee plus $35 per month);

United States District Court, District of Kansas
FIRST AMENDED COMPLAINT
*Elizabeth Baxter v. Legal Helpers Debt Resolution,* et al.
Case No. 11-CV-1050-KHV-JPO

     m.    New Mexico, *see* N.M. STAT. ANN. § 56-2-2 (2010) (criminalizing debt adjustment, except for persons excepted by N.M. STAT. ANN. § 56-2-4 (2010));

     n.    New York, *see* N.Y. GEN. BUS. § 457 (2011) (criminalizing debt management (called "budget planning" by N.Y. GEN. BUS. LAW § 455(1) (2011)) without a license as required by N.Y. BANKING LAW § 579 (2011));

     o.    North Carolina, *see* N.C. GEN. STAT. § 14-424 (2010) (criminalizing debt adjustment except by persons specifically permitted by N.C. GEN. STAT. § 14-426 (2010));

     p.    North Dakota, *see* N.D. CENT. CODE § 13-06-02 (2010) (criminalizing debt adjustment unless exempted under N.D. CENT. CODE, § 13-06-03 (2009) which permits debt adjustment by, among others, "lawful practice of law in [North Dakota]" and "nonprofit or charitable corporations" but not for profit debt adjusters);

     q.    Ohio, *see* OHIO REV. CODE ANN. § 4710.99 (2011) (criminalizing debt adjustment not performed in conformance with OHIO REV. CODE ANN. § 4710.02 (2011));

     r.    Oregon, *see* OR. REV. STAT. § 697.990(3) (2009) (criminalizing failure to register to operate as a debt consolidating agency as required by Or. Rev. Stat. § 697.612 (2007));

     s.    Pennsylvania, *see* 18 PA. CONS. STAT. § 7312 (2010) (criminalizing "debt pooling" except that conducted by Pennsylvania attorneys, certain uncompensated public welfare agencies, and nonprofits);

     t.    South Carolina, *see* S.C. CODE ANN. § 37-7-117 (2009) (criminalizing debt adjustment, among other things, without being licensed as required by S.C. CODE ANN. § 37-7-102 (2009);

     u.    South Dakota, *see* S.D. CODIFIED LAWS § 37-34-2 (2010) (criminalizing debt adjustment except as permitted by S.D. Codified Laws § 37-34-3 (2009), which includes, among others, attorneys and those posting a bond with the attorney general);

     v.    Wyoming, *see* WYO. STAT. ANN. § 33-14-103 (2010) (criminalizing debt adjustment in violation of WYO. STAT. ANN. § 33-14-102 (2008), which prohibits debt adjustment with the exception of that "incurred in the practice of law in this state")

     w.    Virginia, *see* VA. CODE ANN. § 6.1-363.3 (2010) (criminalizing debt management without obtaining licensure as required by VA. CODE ANN. § 6.2-2001 (2010);

United States District Court, District of Kansas
FIRST AMENDED COMPLAINT
*Elizabeth Baxter v. Legal Helpers Debt Resolution,* et al.
Case No. 11-CV-1050-KHV-JPO

       x.    Washington, *see* WASH. REV. CODE ANN. § 18.28.190 (LexisNexis 2011) (criminalizing debt adjusting in violation of the provisions of Wash. Rev. Code Ann. § 18.28.010 to .910 (LexisNexis 2011)); and

       y.    West Virginia, *see* W. VA. CODE ANN. § 61-10-23 (LexisNexis 2010) (criminalizing debt pooling except for limited exceptions).

13.    In at least twelve states, debt adjustment is subject to regulation by civil and administrative enforcement. The following states have civil and administrative penalties associated with debt adjustment.

       a.    Colorado, *see* COLO. REV. STAT. §§ 12.14.5-201 to -242 (Uniform Debt-Management Services Act);

       b.    Idaho, *see* IDAHO CODE ANN. § 26-2223(7) (2010) (requiring licensure for debt adjustment);

       c.    Maine, *see* ME. REV. STAT. tit. 32, § 6181 (2008) (prohibiting debt management without a license) (Technically, the license is called a "registration," but a "registration may not be issued unless the administrator, upon investigation, finds that the financial soundness and responsibility, insurance coverage, consumer education programs and services component, character and fitness of the applicant and, when applicable, its partners, officers or directors, warrant belief that the business will be operated honestly and fairly within the purposes of this chapter." ME. REV. STAT. tit. 32, § 6173(2) (2008));

       d.    Massachusetts, *see* MASS. GEN. LAWS ch. 180, 4A (limiting provision credit counseling services, including debt adjustment, to attorneys and nonprofit charitable corporations);

       e.    Minnesota, *see* MINN. STAT. § 332A.03 (2008) (prohibiting unregistered debt management);

       f.    Mississippi, *see,* MISS. CODE ANN. § 81-22-5 (2008) (prohibiting unlicensed debt management);

       g.    Montana, *see* MONT. CODE ANNO. § 30-14-2004 (2007) (prohibiting unlicensed debt management services);

       h.    New Jersey, *see* N.J. STAT. ANN. § 17:16G-6 (2009) (prohibiting unlicensed debt counseling and limiting licensees to "nonprofit social service" agencies and "nonprofit consumer credit counseling" agencies);

United States District Court, District of Kansas
FIRST AMENDED COMPLAINT
*Elizabeth Baxter v. Legal Helpers Debt Resolution,* et al.
Case No. 11-CV-1050-KHV-JPO

     i.     Rhode Island, *see* R.I. GEN. LAWS § 19-14.8-4 (2009) (prohibiting debt management without registration);

     j.     Texas, *see* TEX. FINANCE CODE § 394.204 (2009) (prohibiting engaging in a debt management service without registration);

     k.     Utah, *see* UTAH CODE ANN. § 13-42-104 (2008) (prohibiting debt management without registration); and

     l.     Virginia, *see* VA. CODE ANN. § 6.1-363.3 (2009) (prohibiting debt management without licensure).

14.     Kansas requires that all debt adjusters register with the Office of the State Banking Commissioner.   A listing of debt adjusters so registered as of June 28, 2010, is attached hereto as Plaintiff's Exhibit 1.

15.     In June 2010, Ms. Baxter was looking for assistance with her debt load and searched on the Internet from her home for debt resolution help.  She spoke with several companies.

16.     The first company she spoke with was CareOne Services, Inc., and she initiated arrangements with them to help her resolve her debts.  These arrangements were against CareOne's advice: CareOne recommended that Ms. Baxter file for relief under the Bankruptcy Code.

17.     She also spoke with a company called Impact Debt Solutions and worked out a payment plan with them.

18.     She then received multiple contacts at her home from Mr. Hurlbut marketing the services of American Debt Services and LHDR, including on June 22, 2010, an e-mail sent to Ms. Baxter at her home in Sumner County, Kansas, which stated as follows:

     You recently requested help with your unsecured debt. I haven't been able to get a hold of you to go over our program. If you still need help with your debt, please call me or e-mail me and I can tell you about our program. If you no longer need help with your debt, please give me the courtesy of a quick e-mail stating that you no longer need the help. I would appreciate it.

United States District Court, District of Kansas
FIRST AMENDED COMPLAINT
*Elizabeth Baxter v. Legal Helpers Debt Resolution,* et al.
Case No. 11-CV-1050-KHV-JPO

19.     Later on June 22, 2010, Ms. Baxter responded to Mr. Hurlbut with an email, from her home, that stated that "I am working with careone.   thanks for your time."

20.     Mr. Hurlbut then e-mailed and phoned Ms Baxter.  Among other things, Mr. Hurbut told Ms. Baxter that CareOne was good but American Debt Services and LHDR were better.  Mr. Hurlbut showed Ms. Baxter that Impact Debt had a poor BBB rating.  He convinced her to work with them. He offered to write letters to the other two companies so they would quit calling her.

21.     At no time did Mr. Hurlbut or any other representative of defendants' disclose to Ms. Baxter that CareOne Services, Inc. was an approved, registered credit services organization with the Kansas Office of the State Bank Commissioner and that LHDR and American Debt Services were not.

22.     In that same call, Mr. Hurlbut, also told Ms. Baxter that American Debt Services and LHDR could help her with her overwhelming credit card debt. He stated they could settle Ms. Baxter's credit card debt for 40 cents on the dollar.  He walked Ms. Baxter through their website, showing her multiple letters from credit card companies showing debt resolved for these reduced amounts.  Ms. Baxter felt that Mr. Hurlbut worked hard to make her feel safe and secure using their services.  Mr. Hurlbut told her that she would be represented by a legal firm and they would do the negotiating.  He also told her that her money would be escrowed, and that when enough funds were accrued they would negotiate payment, but that amounts would have to be approved by Ms. Baxter before funds could be released.

23.     Mr. Hurlbut stated to Ms. Baxter and e-mails from Mr. Hurlbut reiterated that he is a "Certified Debt Specialist."

24.     Later on June 22, Ms. Baxter had a "compliance call" later that day from Damon Beard, Compliance Department Manager, and was accepted into the defendants'

United States District Court, District of Kansas
FIRST AMENDED COMPLAINT
*Elizabeth Baxter v. Legal Helpers Debt Resolution,* et al.
Case No. 11-CV-1050-KHV-JPO

program.   Mr. Beard and Ms. Baxter settled on an amount to be removed from her checking account on the 19thof each month.  Ms. Baxter understood that amount would allow her to be debt free in 27 months.  She was instructed to not speak with any of her creditors as this would hinder the process.  She also was instructed not to send her creditors any money as this would interfere with negotiations.  I was to fax every document received from a cc company to their customer service dept at 1-888-7602971.

25.   Mr. Beard told Ms. Baxter that LHDR's legal office would send out correspondence to her credit card companies and collection calls would greatly reduce. Prior to June 22, Ms. Baxter had not had any collection calls, but after signing with LHDR the she received a very large amount of calls from creditors.

26.   On or about June 23, 2010, Ms. Baxter spoke with Mr. Hurlbut again.  Prior to speaking with Mr. Hurlbut, Ms. Baxter had spoken with two other companies regarding services to settle her debt.  Mr. Hurlbut had convinced her the day before that he had better services. He wrote cancellations letters to both of those companies so they would no longer call Ms. Baxter.

27.   Mr. Hurlbut e-mailed Ms. Baxter a payment structure based on her total debt. Ms. Baxter understood from Mr. Hurlbut that from the first month, $836.46 would be going into escrow and the service cost would be split over the first 14 months. This did not happen. It was 6 months before Ms. Baxter had any money in escrow.

28.   Ms. Baxter then spoke with Christina Caste with American Debt Services and they docu-signed their Power of Attorney paperwork, to allow the attorneys to send letters to her credit card companies to represent her for settlement.   A redacted copy of the documents signed is attached hereto as Plaintiff's Exhibit 2.  (Note that Plaintiff's Exhibit 2 is an eleven-page document despite the page-number notations at the bottom of several pages indicating a seven-page document.)

United States District Court, District of Kansas
FIRST AMENDED COMPLAINT
*Elizabeth Baxter v. Legal Helpers Debt Resolution,* et al.
Case No. 11-CV-1050-KHV-JPO

29.     Ms. Baxter was assured by the defendants' representatives that they worked with credit card companies all the time and were the best at negotiating debt settlement; their job was to assist families in financial hardship. Ms. Baxter signed an agreement that they could debit her account monthly.

30.     The "Attorney Retainer Agreement" includes the following language:

    a.     "LHDR  will review Client's current unsecured debt burden and thereafter negotiate and attempt to enter into settlements with creditors of the Client, in an effort to modify and/or restructure Client's current unsecured debt.  LHDR  and its staff will timely respond to all Client inquiries and keep the Client informed as to all offers of debt modification."  Plaintiff's Exhibit 2 at 3, ¶ III.

    b.     "LHDR  shall subcontract certain tasks including negotiations with creditors and collectors and certain customer support responsibilities to a third party Support Service Provider that has demonstrated competence as per LHDR standards. LHDR and other legally trained, licensed personnel will supervise all negotiations and customer support to ensure that these services comply with established procedures."  Plaintiff's Exhibit 2 at 4, ¶ V.

31.     With respect to fees, the "Attorney Retainer Agreement" includes the following language:

    a.     "For the duration of this agreement, Client will maintain a personal checking or savings account with sufficient funds to meet their monthly commitment as per the Payment Confirmation Schedule. These monies set aside by Client will be deposited as per Payment Confirmation Schedule into a special purpose account established on Client's behalf with Global Client Solutions ( GCS ). For the duration of this agreement, the funds in this account will be utilized to satisfy settlement of the Enrolled Debt as negotiated by  LHDR  and to pay LHDR  its retainer fee and costs."  Plaintiff's Exhibit 2 at 4, ¶ VI.f.

    b.     "In consideration for services to be rendered, Client agrees to pay  LHDR  a retainer fee in the amount of five hundred dollars ($500.00) for initial debt review, analysis and structuring of a debt resolution plan. In addition, Client shall incur a monthly maintenance charge for their debt resolution plan. The amount of the monthly maintenance charge, and the date that it shall commence are detailed in the Payment Confirmation Schedule and will vary on an individual basis.
    "If, based upon the original account balance(s) as listed on the Creditor Listing Form [Exhibit A],  LHDR  succeeds in obtaining a sixty-five percent (65%) or greater reduction of Client's total

- 11 -

United States District Court, District of Kansas
FIRST AMENDED COMPLAINT
*Elizabeth Baxter v. Legal Helpers Debt Resolution,* et al.
Case No. 11-CV-1050-KHV-JPO

      scheduled debt, Client agrees to pay  LHDR  on a contingency fee basis at the rate of five percent (5%) of the amount of debt reduction (total scheduled debt less amount of settlement). The initial five hundred dollar ($500.00) retainer fee paid by Client shall be fully credited towards Client's 5% contingency fee obligation, which will be reconciled at the conclusion of the debt resolution plan.

      "The management and maintenance (services) of a debt resolution plan as implemented by  LHDR  shall be performed under the direct supervision of  LHDR  by the  Support Service Provider  at a cost of fifteen percent (15%) of the Client's total scheduled debt (hereinafter referred to as Service Cost).  LHDR  has a non-exclusive reciprocal referral Agreement with  Support Service Provider  to provide these services under the direct supervision of  LHDR . These services, required for the debt resolution plan, are not legal services, and as such there is no attorney-client relationship between Client and  Support Service Provider . In addition, any and all communication between Client and  Support Service Provider  is not protected by attorney-client privilege.  Support Service Provider  cannot and will not provide any legal advice to the Client other than that as may be communicated through  Support Service Provider  by and under the direct supervision of  LHDR . The fifteen percent (15%) Service Cost shall be paid by Client as follows:

      "1.    Client shall make an initial payment to  LHDR  in an amount that is equal to five and one half percent (5.5%) of the Client's total scheduled debt and shall be satisfied by the first consecutive monthly payment(s) as detailed in the Payment

      "2.    The remaining Service Cost obligation, equaling nine and one half percent (9.5%) of the Client's total scheduled debt shall be paid by Client in equal consecutive monthly payments as is also detailed in the Payment Confirmation Schedule. The Payment Confirmation Schedule, incorporated into this Agreement as per  VI. (d.) shall fully detail the dollar amounts and due dates of all fees and costs related Client's  LHDR  debt resolution plan."  Plaintiff's Exhibit 2 at 5, ¶ VIII.

      c.    By signing this Agreement, and the Global Client Solutions (GCS) Special Purpose Account Application, Client authorizes  LHDR  (or its designees) to deduct the initial Retainer Fee, monthly Maintenance Charge and the Service Cost via electronic funds transfer (EFT) from the special purpose account established on Client's behalf with Global Client Solutions (GCS) as per § VI.(F.)."  Plaintiff's Exhibit 2 at 5, ¶ IX.

    32.    With respect to resolution procedures, the "Attorney Retainer Agreement" includes the following language:

      "Arbitration: In the event of any claim or dispute between Client and  LHDR  related to the Agreement or related to any performance of any services related to this Agreement, such claim or dispute shall be

United States District Court, District of Kansas
FIRST AMENDED COMPLAINT
*Elizabeth Baxter v. Legal Helpers Debt Resolution,* et al.
Case No. 11-CV-1050-KHV-JPO

> submitted to binding arbitration upon the request of either party upon the service of that request. The parties shall initially agree on a single arbitrator to resolve the dispute. The matter may be arbitrated either by the Judicial Arbitration Mediation Service or American Arbitration Association, as mutually agreed upon by the parties or selected by the party filing the claim. The arbitration shall be conducted in either the county in which Client resides, or the closest metropolitan county. Any decision of the arbitrator shall be final and may be entered into any judgment in any court of competent jurisdiction." Plaintiff's Exhibit 2 at 7, ¶ XVI.

33.     The set of docusign documents that contained the "Attorney Retainer Agreement" also included a "Special Purpose Account Application" made by Ms. Baxter to defendant Global.  The application includes the following language:

> a.     "I hereby apply for and agree to establish a non-interest bearing special purpose account (the Special Purpose Account ) to be administered at a bank selected by Global Client Solutions LLC ( Global) for the purpose of accumulating funds to repay my debts in connection with a debt settlement program (your Program) sponsored by the organization identified below (the Sponsor)."  Plaintiff's Exhibit 2 at 11.

> b.     "I hereby authorize (a) periodic deposits to be made to my Special Purpose Account pursuant to the authorization provided below and (b) periodic disbursements to be made from my Special Purpose Account pursuant to instructions that I may give from time to time. In this regard, I hereby authorize payment from my Special Purpose Account of the fees and charges provided for in this Application and the Agreement."  Plaintiff's Exhibit 2 at 11.

34.     With respect to seeking to incorporate by reference other documents, the Special Purpose Account Application contains the following language:

> "I understand that the Special Purpose Account's features, terms, conditions and rules are further described in an Account Agreement and Disclosure Statement that accompanies this Application (the Agreement) or as published at http://tinyurl.com/dj6gla. I acknowledge that I have received a copy of the Agreement or have viewed the agreement at the website above; that I have read and understand it; that the Agreement is fully incorporated into this Application by reference; and that I am bound by al of its terms and conditions." Plaintiff's Exhibit 2 at 11.

A correct copy of the incorporated "Special Purpose Account Agreement" is attached hereto as Plaintiff's Exhibit 3.

United States District Court, District of Kansas
FIRST AMENDED COMPLAINT
*Elizabeth Baxter v. Legal Helpers Debt Resolution,* et al.
Case No. 11-CV-1050-KHV-JPO

35.    The "Special Purpose Account Agreement" contains the following language:

a.    "Your Account is a special purpose account that you can use in connection with the debt settlement program you have undertaken. In general, you will be making periodic deposits to your Account from your primary bank account, and you will be periodically disbursing funds from your Account to repay your debts and the costs associated with your Account and your debt settlement program. Your Account is an FDIC insured sub-account within a master custodial account maintained at a bank designated or selected by Global." Plaintiff's Exhibit 3 at 1.

b.    "Limitation of Liability: Under no circumstances shall Global ever be liable for any special, incidental, consequential, exemplary or punitive damages." Plaintiff's Exhibit 3 at 2.

36.    Subsequent to engaging defendants' services, Ms. Baxter received at her home in Wellington, Kansas, a letter dated June 30, 2010 from Global entitled "Welcome to Global Client Solutions." A redacted copy of the letter is attached as Plaintiff's Exhibit 4.

37.    On August 7, 2010 Ms. Baxter received an offer from CitiBank to settle her account for $9,799.29. She called LHDR's customer service. They told her that since CitiBank was willing to settle and the offer was good Ms. Baxter should take it. Ms. Baxter then called CitiBank and they wanted the money in 3 monthly installments to be paid off in 90 days. This was not a viable option for Ms. Baxter. All her extra money was being paid to LHDR and she did not have over $3,000 a month anyway to pay them. LHDR would not talk with them because there was not enough money in escrow for them to pay yet.

38.    On November 19, 2010, Ms. Baxter received a court summons saying she was being sued by CitiBank in the case of *CitiBank v. Baxter,* Sumner County, Kansas, District Court case number 2010 LM 972. She called LHDR client services in a panic. I does not remember the name of the man she spoke with. He told Ms. Baxter not to be concerned, that this happened frequently. He encouraged her to call the Clerk of the

United States District Court, District of Kansas
FIRST AMENDED COMPLAINT
*Elizabeth Baxter v. Legal Helpers Debt Resolution,* et al.
Case No. 11-CV-1050-KHV-JPO

Court and ask for a "response form".  He told Ms. Baxter to fill out the response form stating she was working with their debt resolution attorneys and trying to work out a settlement and to give the court and the attorney the phone number for LHDR attorneys. Ms. Baxter was to state on the response that she knew she owed the money but was working a settlement and telling the court how much she was paying a month to resolve this issue.  The representative assured Ms. Baxter that  the case would be cancelled because she was making a good faith effort to pay her debt.  So Ms. Baxter did as they recommended.

39.     Ms. Baxter called again in a panic when she received notice of pre-trial on the *CitiBank* case.  She spoke with Amanda Walker at American Debt Services.    Ms. Walker told Ms. Baxter to take with me to court a monthly income/expense worksheet, a Declaration Letter from LHDR saying I was in good standing with their program and a copy of the DPOA paperwork. Ms. Walker told Ms. Baxter that the *CitiBank* lawsuit was not a bad thing because when CitiBank won the case, and garnished Ms. Baxter's wages, none of the other companies would be able to. LHDR would see that CitiBank "got first payment". The other credit card companies would then be more likely to settle for funds built up in escrow. Ms. Walker also told Ms. Baxter that LHDR could also "work out a negotiation with CitiBank on the backside after the other cards were paid off. We do it all the time."

40.     Ms. Baxter will not, if she is garnished, be able to make my payments to LHDR and believes that she will most likely have to declare bankruptcy, which is what she was trying to avoid all along.

41.     The conversation with Ms. Walker was Ms. Baxter's last last phone conversation with LHDR/American Debt Services.

United States District Court, District of Kansas
FIRST AMENDED COMPLAINT
*Elizabeth Baxter v. Legal Helpers Debt Resolution,* et al.
Case No. 11-CV-1050-KHV-JPO

42.    Over the course of her relationship with defendants, Ms. Baxter has faxed (from Sumner County, Kansas) numerous communications from Ms. Baxter's creditors to American Debt Services acting on behalf of LHDR.

43.    Over the course of her relationship with defendants, Global has deducted $8,854.44 from her bank account at First National Bank in Wellington, Kansas, seven times, as follows:

|    | Date | Amount |
|----|------|--------|
| a. | 7/21/10 | $1,311.19 |
| b. | 8/23/10 | $877.90 |
| c. | 9/22/10 | $1,333.07 |
| d. | 10/21/10 | $1,333.07 |
| e. | 11/23/10 | $1,333.07 |
| f. | 12/22/10 | $1,333.07 |
| g. | 1/18/11 | $1,333.07 |
|    | Total Payments | $8,854.44 |

44.    Over the course of her relationship with defendants, Ms. Baxter has been charged the following fees:

|    | Date | Description | Amount |
|----|------|-------------|--------|
| a. | 7/21/10 | "Setup Fee" | $5.00 |
| b. | 7/21/10 | "Account Maintenance Fee" | $8.75 |
| c. | 7/21/10 | "Maintenance Fee" | $49.00 |
| d. | 7/21/10 | "Retainer Fee" | $166.67 |
| e. | 7/21/10 | "Monthly Cost" | $1,081.77 |
| f. | 8/23/10 | "Account Maintenance Fee" | $8.75 |
| g. | 8/23/10 | "Maintenance Fee" | $49.00 |
| h. | 8/23/10 | "Retainer Fee" | $166.67 |
| i. | 8/23/10 | "Monthly Cost" | $653.48 |

United States District Court, District of Kansas
FIRST AMENDED COMPLAINT
*Elizabeth Baxter v. Legal Helpers Debt Resolution,* et al.
Case No. 11-CV-1050-KHV-JPO

|    | Date     | Description               | Amount     |
|----|----------|---------------------------|------------|
| j. | 9/22/10  | "Account Maintenance Fee" | $8.75      |
| k. | 9/22/10  | "Maintenance Fee"         | $49.00     |
| l. | 9/22/10  | "Retainer Fee"            | $166.66    |
| m. | 9/22/10  | "Monthly Cost"            | $1,108.66  |
| n. | 10/21/10 | "Account Maintenance Fee" | $8.75      |
| o. | 10/21/10 | "Maintenance Fee"         | $49.00     |
| p. | 10/21/10 | "Monthly Cost"            | $331.54    |
| q. | 11/1/10  | "Account Maintenance Fee" | $8.75      |
| r. | 11/19/10 | "Maintenance Fee"         | $49.00     |
| s. | 11/19/10 | "Monthly Cost"            | $331.54    |
| t. | 12/01/10 | "Account Maintenance Fee" | $8.75      |
| u. | 12/20/10 | "Maintenance Fee"         | $49.00     |
| v. | 12/20/10 | "Monthly Cost"            | $331.54    |
| w. | 1/3/11   | "Account Maintenance Fee" | $8.75      |
| x. | 1/19/11  | "Maintenance Fee"         | $49.00     |
| y. | 1/19/11  | "Monthly Cost"            | $331.54    |
|    |          | Total Fees                | $5,079.32  |

45.     Over the course of her relationship with the defendants, Global has sent her monthly statements to her at her residence in Wellington, Kansas, by the United States Postal Service no fewer than six times.

46.     Over the course of her relationship with the defendants, she has received numerous e-mail communications from the defendants at her residence.

47.     As recently as late January 2011, Macey & Aleman, a partnership including Thomas G. Macey and Jeffrey John Aleman, was running advertisements in Sumner County, Kansas, on HGTV for their national bankruptcy services.  These advertisements

United States District Court, District of Kansas
FIRST AMENDED COMPLAINT
*Elizabeth Baxter v. Legal Helpers Debt Resolution,* et al.
Case No. 11-CV-1050-KHV-JPO

compared bankruptcy favorably to debt settlement services, noting that the majority of debt settlement plans fail.

48.     At no time did Ms. Baxter speak to or receive any communication from Keith A. Wellman.

49.     At no time did any person to whom Ms. Baxter spoke from any of the defendants describe themselves as a lawyer.

50.     From the date of the Ms. Baxter's engagement of the defendants, June 23, 2011, to Ms. Baxter's last communication from the defendants, February 2, 2011, was 224 days.

### Count One:  Kansas Credit Services Organization Act — Ongoing Violation

51.     Paragraphs 1 through 50 are hereby incorporated by reference as though fully set out.

52.     Ms. Baxter is a  "consumer" as that term is defined by K.S.A. 50-1117(b).

53.     Ms. Baxter is also a "consumer" as that term is defined by K.S.A. 50-624(b).

54.     The defendants are each "suppliers" as that term is defined by K.S.A. 50-624(j).

55.     The dealings between Ms. Baxter and the defendants constitute "consumer transactions" as that term is defined by K.S.A. 50-624(c).

56.     The defendants are not entitled to claim the protection of  K.S.A. 50-1116(b).

57.     Defendants are each a "credit services organization" as that is defined by K.S.A. 50-1117(c), because each is "a person who engages in . . . the business of debt management services for a fee, compensation or gain."

United States District Court, District of Kansas
FIRST AMENDED COMPLAINT
*Elizabeth Baxter v. Legal Helpers Debt Resolution,* et al.
Case No. 11-CV-1050-KHV-JPO

58.     No defendant is registered with the Office of the Kansas State Banking Commissioner as a credit services organization.  A listing of debt adjusters so registered as of June 25, 2010, is attached hereto as Plaintiff's Exhibit 1.

59.     Defendants are each in violation of K.S.A. 50-1118(a).

60.     Defendants are each in violation of K.S.A. 50-626(a) by virtue of K.S.A. 50-1132 which provides that "Any violation of this act or any rule and regulation promulgated thereunder is a deceptive act or practice  under the Kansas consumer protection act. Any remedy provided by this act shall be construed to be in addition to other remedy provided by the Kansas consumer protection act."

61.     The defendants' actions were ongoing, and therefore subject to a daily maximum penalty pursuant to K.S.A. 50-636(d).

### Count Two:  Kansas Credit Service Organizations Act — Advertising

62.     Paragraphs 1 through 61 are hereby incorporated by reference as though fully set out.

63.     The defendants' advertising to Kansas residents, including the plaintiff, over the Internet, without being properly registered with the Kansas Banking Commissioner is in violation of K.S.A. 50-1121(f).

64.     The defendants' oral marketing through is also in violation K.S.A. 50-1121(f).

65.     Defendants are each in violation of K.S.A. 50-626(a) by virtue of K.S.A. 50-1132.

### Count Three:  Kansas Credit Service Organizations Act — Attempts to Limit Liability

66.     Paragraphs 1 through 65 are hereby incorporated by reference as though fully set out.

United States District Court, District of Kansas
FIRST AMENDED COMPLAINT
*Elizabeth Baxter v. Legal Helpers Debt Resolution,* et al.
Case No. 11-CV-1050-KHV-JPO

67.    The limitation of liability contained in Global's Special Purpose Account Agreement as set out in Plaintiff's Exhibit 3 at 29, as alleged in subparagraph 35.b hereof, violates K.S.A. 50-1121(u).

## Count Four:  Kansas Consumer Protection Act — Deceptive Acts

68.    Paragraphs 1 through 67 are hereby incorporated by reference as though fully set out.

69.    In none of the communications from the defendants or their agents did any disclose that none was authorized to act as a credit services organization pursuant to Kansas law or are lawfully permitted to provide the proposed services to Kansas residents. This is deceptive in violation of K.S.A. 50-626(a) as defined by K.S.A. 50-626(b)(3) as the wilful failure to state a material fact or the wilful omission of a material fact.

70.    In none of Mr. Hurlbut's communications with Ms. Baxter did Mr. Hurlbut disclose that CareOne *was* authorized to act as a credit services organization.

71.    Mr. Hurlbut's assertions in Plaintiff's Exhibits 2 and 5 that he was a "Certified Debt Specialist" are deceptive in violation of K.S.A. 50-626(a) as defined by K.S.A. 50-626(b)(1)(A) & (B), in that the assertion of a "certification" amounts to a representation that Mr. Hurlbut had approval or status he did not have, and that the services to be provided by Rise Above had sponsorship, characteristics, or qualities that they do not have.

## Count Five:  Kansas Consumer Protection Act — Unconscionability

72.Paragraphs 1 through 71 are hereby incorporated by reference as though fully set out.

73.    The defendants charged fees totaling $5,079.32. The maximum any registered credit services organization (of which there are many, *see* Plaintiff's Exhibit 1),

United States District Court, District of Kansas
FIRST AMENDED COMPLAINT
*Elizabeth Baxter v. Legal Helpers Debt Resolution,* et al.
Case No. 11-CV-1050-KHV-JPO

for the same time frame would be $190.00.  *See* K.S.A. 50-1126(b)(1) & (2).  The excessive charge violates K.S.A. 50-627(a) as illustrated by K.S.A. 50-627(b)(2).

74.    The services provided by the defendants to Ms. Baxtger in connection with her *CitiBank* litigation constitute the unauthorized practice of law, which the plaintiff contends is both deceptive in violation of K.S.A. 50-626(a) and unconscionable in violation of K.S.A. 50-627(a).

## Count Six: Civil Conspiracy

75.    Paragraphs 1 through 74 are hereby incorporated by reference as though fully set out.

76.    The concerted actions of all defendants constitutes a civil conspiracy under Kansas law.

## Count Seven:  Declaratory Judgment and Injunction

77.    Paragraphs 1 through 76 are hereby incorporated by reference as though fully set out.

78.    The plaintiff seeks a declaration that the defendants' acts violated the Kansas Credit Services Organization Act and the Kansas Consumer Protection Act pursuant to K.S.A. 50-634(a)(1), and an injunction against future violations pursuant to K.S.A. 50-634(a)(2).

79.    The plaintiff seeks a declaration that the optional arbitration provision contained in the Attorney Retainer Agreement of Legal Helpers Debt Resolution, LLC and Macey, Aleman, Hyslip & Searns, is unconscionable and unenforceable because it exposes the plaintiff to the possibility of cost-prohibitive arbitration in order to secure her protections under Kansas law.

United States District Court, District of Kansas
FIRST AMENDED COMPLAINT
*Elizabeth Baxter v. Legal Helpers Debt Resolution,* et al.
Case No. 11-CV-1050-KHV-JPO

80.     Because the defendants' written agreements with the plaintiff are in violation of Kansas criminal law by virtue of both K.S.A. 50-1131 and K.S.A. 21-4402, the contracts are void and unenforceable, and the plaintiff seeks a declaration thereof.

## Demand for Judgment

THEREFORE, plaintiffs demand judgment against the defendants as follows:

81.     Against Legal Helpers Debt Resolution, LLC, reasonable penalties pursuant to K.S.A. 50-634(b), and K.S.A. 50-636(a) and (d) in an amount not to exceed $2,240,000.00.

82.     Against Macey, Aleman, Hyslip & Searns, reasonable penalties pursuant to K.S.A. 50-634(b), and K.S.A. 50-636(a) and (d) in an amount not to exceed $2,240,000.00.

83.     Against Legal Helpers Debt Resolution, LLC and Macey, Aleman, Hyslip & Searns, declaratory judgment that the defendants' arbitration agreement with the plaintiff is unconscionable and unenforceable;

84.     Against American Debt Services, Inc., reasonable penalties pursuant to K.S.A. 50-634(b), and K.S.A. 50-636(a) and (d) in an amount not to exceed $2,240,000.00.

85.     Against Global Client Solutions, LLC, reasonable penalties pursuant to K.S.A. 50-634(b), and K.S.A. 50-636(a) and (d) in an amount not to exceed $2,240,000.00.

86.     Against all defendants, jointly and severally, for:

    a.     Damages in an amount to be determined by the Court, but in no case less than $8,854.44 pursuant to K.S.A. 50-1133(a);

    b.     Punitive damages pursuant to K.S.A. 50-1133(b) and the common law;

    c.     Declaratory judgment that the defendants' acts violated the Kansas Credit Services Organization Act and the Kansas

United States District Court, District of Kansas
FIRST AMENDED COMPLAINT
*Elizabeth Baxter v. Legal Helpers Debt Resolution,* et al.
Case No. 11-CV-1050-KHV-JPO

> Consumer Protection Act pursuant to K.S.A. 50-634(a)(1), and an injunction against future violations pursuant to K.S.A. 50-634(a)(2);
>
> d.    Declaratory judgment that the defendants' written agreements with the plaintiff are in violation of Kansas criminal law by virtue of both K.S.A. 50-1131 and K.S.A. 21-4402, and that the contracts are therefore void and unenforceable in their entirety;
>
> e.    Reasonable attorney fees pursuant to K.S.A. 50-1133(a) and K.S.A. 50-634(e); and
>
> f.    The costs of this action, together with such other relief as the Court may determine the plaintiffs to be entitled at law or in equity.

87.    With respect to the declaratory judgment sought by paragraph 83 and subparagraph 86.d against defendants Legal Helpers Debt Resolution, LLC and Macey, Aleman, Hyslip & Searns, in the event said defendants elect to seek to enforce the arbitration provision of their Attorney Retainer Agreement, plaintiff requests that the question of the legality and enforceability of the contract in general, and the arbitration provision in particular, be referred to arbitration (a) with instructions that the parties' dispute should be remanded back to this Court by the arbitrator should the arbitrator determine that either or both is unenforceable and (b) with appropriate protections to ensure that the arbitration proceeding is not cost prohibitive to the plaintiff.

88.    With respect to the declaratory judgment sought by subparagraph 86.d against defendant Global Client Solutions,, in the event said defendant elects to enforce the arbitration provision of their Attorney Retainer Agreement, plaintiff requests that the question of the legality and enforceability of the contract in general be referred to arbitration with instructions that the parties' dispute should be remanded back to this Court by the arbitrator should the arbitrator determine that the contract is unenforceable.

United States District Court, District of Kansas
FIRST AMENDED COMPLAINT
*Elizabeth Baxter v. Legal Helpers Debt Resolution,* et al.
Case No. 11-CV-1050-KHV-JPO

## Jury Demand

Plaintiff demands a trial by jury.

## Designation of Place of Trial

Plaintiffs designate Wichita, Kansas, as the place of trial.

## Notice of Attorney Lien

Plaintiff and plaintiff's counsel hereby gives notice that plaintiffs' counsel claims, pursuant to K.S.A. 7-108, an attorney lien on any and all proceeds due or paid to the plaintiffs.

## Conclusion

Wherefore, the plaintiff requests that the Court grant the relief set out in this First Amended Complaint.

Respectfully submitted,


/s/ Martin J. Peck
Martin J. Peck, #16273
Security State Bank Building
107 E. Harvey, Second Floor
P.O. Box 421
Wellington, KS 67152
(620) 326-5997
Fax (620) 326-6887
peck@martinjpeck.com